Jack C. NUGENT and CNA Insurance Company, Appellants,

v.

UTICA CUTLERY COMPANY and Mathias Klein & Sons, Inc., Appellees.

No. 16640.

Court of Appeals of Texas, San Antonio.

June 30, 1982.

Rehearing Denied July 27, 1982.

Gary W. Javore, Henry W. Christopher and Wm. H. Quirk, III, Johnson & Christopher, San Antonio, for appellants.

James D. Guess, Groce, Locke & Hebdon, San Antonio, for appellees.

Before KLINGEMAN, ESQUIVEL, CLARK and CANTU, JJ.

## OPINION

KLINGEMAN, Justice.

This is an appeal from a take-nothing judgment entered against appellant, Jack C. Nugent, in a products liability case involving an allegedly defective knife.[1] Appellant sought to establish that the manufacturer, Utica Cutlery Company, and the seller, Mathias Klein & Sons, Inc. (appellees herein), were liable for either a manufacturing defect or a failure to warn. In answer to appellant's liability issues, the jury failed to find that the knife was defective or that appellees breached a duty to warn.

Appellant had been performing electrician-type work for approximately one year, when in the course of his employment, he purchased from his employer, Calhoun Electric (a non-party to the suit) a knife wrapped in cellophane. When the knife was three-to-four weeks old, appellant suffered an injury to his eye while using the knife to backstrip wires on a hall fixture. Appellant's description of the incident revealed that he was in the hallway of a house standing at an angle, when he placed the knife into the wire, just through the sheathing. As appellant stripped the wire down, the knife got caught. At this point appellant gave the knife a jerk. The knife snapped and went into his eye. Appellant blinked and fluid squirted out. He grabbed his eye and sought help. He was taken to a hospital where surgery was performed. Appellant suffered permanent injury to his eye, including loss of vision.

At the time of the injury appellant did not realize that the knife had broken. Worried about the injury to his eye, appellant really did not know what had happened to the knife. He thought it had slipped.

Appellant did not realize that the knife had broken until a few weeks after the incident; when he was out of the hospital, recuperating from the surgery performed on his eye. While going through his uniforms in order to send them to the company to be cleaned, appellant's wife found the knife in his shirt pocket. Until this time appellant did not know the location of the knife. Discovering that the knife was broken, appellant reasoned that this was why the injury occurred. Appellant testified:

... when it sort of struck me, the reason it happened the way it did, because I had never had the blade come right for me, you know when it slipped off. Usually slid off to the side.

Appellant basically contends that the knife involved had a manufacturing defect which caused it to break resulting in the injury to his eye. He asserts that he was not given adequate warning of any defect and that the manufacturer represented to the public that the knife was sturdily constructed of high grade steel, carefully tempered. Appellant's expert witness testified that it was his opinion that the top of the knife had a residue in it, which indicated that the residue resulted from a relatively high heat condition and that in metallurgical terms this condition is known as a stress riser. He testified that the stress riser was a manufacturing defect which caused the knife to break. On cross-examination appellant's expert witness admitted that he made a 4½ or 5 page typewritten report of the investigation he made of the knife blade to determine the cause of the fracture of the blade of the knife and that nowhere in such report was the word stress riser ever found. On further cross-exami-

1. CNA Insurance Company intervened at trial seeking subrogation to that portion of Plaintiff Nugent's recovery equal to the amount it paid to Nugent in Worker's Compensation Benefits plus reasonable attorney's fees. CNA as well as Nugent timely appealed the judgment of the trial court. Since CNA's interest is dependent upon Nugent's recovery, it is not necessary for this court to further address CNA in this opinion.

nation he also testified he had used heat to cut the knife blade into four pieces.

Appellee's expert witness testified that he obtained some pieces of the knife blade for examination and made extensive examinations of the pieces of metal. He testified that it was his opinion that the break was caused by an overload on the material which in layman's terms meant an excessive amount of force being applied to the blade. He testified that in the course of such examination and analysis he made of the knife, he did not find any evidence of any defect or problem with the metal.

When asked what his opinion was as to the reason for or cause for the breaking where the breaking occurred, he stated:

It is apparent that the only cause of the fracture was an application of a load or stress in excess of what the material was capable of standing in the blade fracture. It was overloaded in a bending fashion. By pressing on the side of the blade to the point where the blade could no longer withstand the load and it fractured from one surface of the blade to the other.

Appellant complains in his first point of error that the trial court erred in refusing to submit to the jury the following requested special issues:

(1) Do you find from a preponderance of the evidence that defendant Mathias Klein & Sons, Inc. represented to the public that its electrician's skinning knife, such as the knife used by Jack Nugent, was "sturdily constructed of high grade steel carefully tempered" and "guaranteed against defects in materials and workmanship."

(2) Do you find from a preponderance of the evidence that representations of Mathias Klein & Sons, Inc. that the electrician's skinning knife used by Jack Nugent on the occasion in question was "sturdily constructed of highgrade steel carefully tempered" and "guaranteed against defects in materials and workmanship" were false?

(3) Do you find from a preponderance of the evidence that such representations were relied upon by Calhoun Electric

Company, in purchasing the knives sold and distributed by Defendant Mathias Klein & Sons, Inc.?

(4) Do you find from a preponderance of the evidence that such representations were a producing cause of the injury and damages, if any, suffered by Jack Nugent on June 15, 1977?

To support the submission of these requested special issues appellant contends that he pled and offered evidence to prove a cause of action based upon Restatement (Second) of Torts § 402B (1965). Section 402B is a distinct cause of action which imposes strict liability for physical harm to the consumer resulting from a misrepresentation of material fact concerning the character or quality of the product sold and, upon which the consumer justifiably relied, even though the misrepresentation is an innocent one, and not made fraudulently or negligently. Appellant asserts that the submitted special issues inquiring whether the knife was manufactured in a defective manner and, if so, was the producing cause of the injury, were based upon a section 402A cause of action and not upon a section 402B cause of action. Therefore, the trial court's failure to submit these requested issues denied appellant a fair submission of the controlling and ultimate issues in the case.

The essential elements of a section 402B cause of action are:

(1) One engaged in the business of selling chattels

(2) who, by advertising, labels or otherwise, makes to the public a misrepresentation

(3) of a material fact concerning the character or quality of a chattel sold by him

(4) is subject to liability for physical harm to a consumer of the chattel caused by

(5) justifiable reliance upon the misrepresentation,

(6) even though it is not made fraudulently or negligently, and in the absence of any contractual relation with the seller.

The requested issues in question here do *not* ask the jury (1) whether the representations made were one of material facts or (2) whether appellant's employer justifiably relied upon these representations when purchasing Klein tools. Appellant argues at great length that the requested issues were in substantially correct form and that the omission of these two elements was not fatal to the submission of these requested issues. Specifically, appellant contends that the representations "by their nature [were] representations of material facts concerning the character and quality of the knife" and that the requested issue addressing reliance was only at slight variance with the wording of the general rule with respect to justifiable reliance. Moreover, appellant asserts "justifiable reliance" is an inherent element of the issue of producing cause.

■ Appellant's argument is without merit and does not support his contention that the failure of the trial court to submit requested issues constitutes reversible error. 3 R. McDonald, Texas Civil Practice § 12.33.2 (rev. 1970), states "When the requested special issue is one of a series of interdependent issues all of which are essential properly to submit a theory of recovery or defense (e.g., act, negligence, and proximate cause) and none of which is already included in the charge, a request is in 'substantially correct' form only when it incorporates all of the required special issues." In addition, there is a line of court of civil appeals cases which states:

> When a requested special issue is one of a series of interdependent issues all of which are essential to submit a theory of recovery or defense, such as discovered peril, and none of such issues are already included in the charge, a request is in substantially correct form as required by Rule 279, Texas Rules of Civil Procedure, only when it incorporates all of the required special issues.

*Lee v. Howard*, 483 S.W.2d 922 (Tex.Civ. App.—Eastland 1972, writ ref'd n.r.e.). *See Mata v. Albert*, 548 S.W.2d 496 (Tex.Civ. App.—Eastland 1972, writ ref'd n.r.e.); *Yellow Cab Co. v. Smith*, 381 S.W.2d 197 (Tex. Civ.App.—Waco 1964, writ ref'd n.r.e.);

*Holland v. Lesesne*, 350 S.W.2d 859 (Tex. Civ.App.—San Antonio 1961, writ ref'd n.r. e.); *Crain v. West Texas Utilities Co.*, 218 S.W.2d 512 (Tex.Civ.App.—Eastland 1949, writ ref'd n.r.e.); *Federal Underwriters Exchange v. Tubbe*, 193 S.W.2d 563 (Tex.Civ. App.—Beaumont 1946, writ ref'd n.r.e.); *Attebery v. Henwood*, 177 S.W.2d 95 (Tex. Civ.App.—Texarkana 1943, writ ref'd w.o. m.); *City of Wichita Falls v. Lewis*, 68 S.W.2d 388 (Tex.Civ.App.—Fort Worth 1933, writ dism'd).

■ In the case at bar, material fact and justifiable reliance are essential issues within a series of interdependent issues, all of which are essential to submit the theory of strict liability based upon misrepresentation. *See* Sales, *The Innocent Misrepresentation Doctrine: Strict Tort Liability Under Section 402B*, 16 Hous.L.Rev. 239, 256–64 (1979). Without a finding upon these special issues an affirmative finding upon the requested issues would not have been sufficient to impose liability based upon the theory of misrepresentation. Therefore, appellant's failure to request submission of issues as to material fact and justifiable reliance was a "waiver of any right to complain here that they should have been submitted." *City of Wichita Falls v. Lewis*, 68 S.W.2d 388 (Tex.Civ.App.—Fort Worth 1933, writ dism'd) (*citing Ormsby v. Ratcliffe*, 117 Tex. 242, 1 S.W.2d 1084 (1923)). Appellant's first point of error is overruled.

■ Appellant complains in his second point of error that the trial court erred in overruling his objections to the submission of questions inquiring whether appellant misused the knife because there was no evidence to support such a defensive theory. Tex.R.Civ.P. 279 states that the trial court "shall submit controlling issues made by the written pleadings and the evidence." *See Texas General Indemnity v. Scott*, 152 Tex. 1, 253 S.W.2d 651 (1958). Likewise, a defendant is entitled to an affirmative submission of his defensive issues. *Schuhmacher Co. v. Holcomb*, 142 Tex. 332, 177 S.W.2d 951 (1944). In *General Motors Co. v. Hopkins*, 548 S.W.2d 344 (Tex.1977), the

Supreme Court stated that "misuse is a defense in products liability suits." *Id.* at 349. Since appellee, in the case at bar, plead the defense of misuse, the trial court could refuse the requested issues of misuse only if there was no evidence to raise the issues. *Garza v. Alviar,* 395 S.W.2d 821, 824 (Tex.1965); *Burke Wiley, Inc. v. Lenderman,* 545 S.W.2d 226, 228 (Tex.Civ.App.—Houston [1st Dist.] 1976, writ ref'd n.r.e.).

■ "The evidence test for a 'no evidence' point is to examine the entire record for evidence that supports the submission of the issue and the finding of the jury and ignore all evidence to the contrary." *Metropolitan Life Ins. Co. v. Duncan,* 566 S.W.2d 351, 352 (Tex.Civ.App.—Fort Worth 1978, no writ). We have examined the record and have found testimony by appellant stating that at the time of the injury he was skinning wire by reaching overhead and pulling the knife towards him. The knife caught in the wire requiring appellant to give a "little extra tug" at the knife. Although appellant stated that the pressure exerted at this time was of no greater force than he had applied in the past, appellee's expert witness testified that upon examination of the blade of the knife he found no defect in the metal of the knife and that the break occurred due to an excessive amount of force applied to the blade. This evidence demonstrating appellant's use of the knife at the time of the injury, coupled with the inconclusive evidence as to when and how the knife broke, was sufficient to support the submission of issues to the jury based upon the defensive theory of misuse. Appellant's point of error number two is overruled. Furthermore, based upon this finding, we overrule appellant's point of error number seven which asserts that the question submitted to the jury inquiring as to the percentage of the accident attributable to appellant and appellee was erroneous because there was no evidence to support the submission of the misuse issues.

In points of error number three and four appellant complains that the trial court erred in submitting to the jury an incorrect instruction as to what constitutes misuse and that this instruction coupled with the erroneous submission of the misuse issues constituted a comment on the weight of the evidence causing the jury to believe that appellant's misuse of the knife was the cause of the break. Appellant contends that such action was erroneous because it injected into the jury deliberations the defensive theory of misuse, therefore, depriving appellant of a fair submission of the defect issues which were actually raised by the evidence.

■ Although we do not believe that the trial court's instruction on misuse was incorrect we point out that any possible error in the submission of the misuse issues and the accompanying instruction was harmless. Tex.R.Civ.P. 434 provides that a judgment shall not be reversed on appeal unless "the error complained of amounted to such a denial of the rights of the appellant as was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case." *See City of Galveston v. Hill,* 151 Tex. 139, 246 S.W.2d 860, 863 (1952); *Young v. Texas & Pacific Railway Co.,* 347 S.W.2d 345, 348–49 (Tex.Civ.App.—El Paso 1961, no writ). The Supreme Court in *Boatland of Houston, Inc. v. Bailey,* 609 S.W.2d 743 (Tex.1980) set out

> Generally, error in the submission of an issue is harmless when the findings of the jury in answer to other issues are sufficient to support the judgment. *Texas & New Orleans Railroad Co. v. McGinnis,* 130 Tex. 338, 109 S.W.2d 160, 163 (1937). An exception exists, however, when the erroneously submitted issue confuses or misleads the jury. *H. E. Butt Grocery Co. v. Johnson,* (Tex.Civ.App.—San Antonio 1949, writ ref'd n.r.e.).

609 S.W.2d at 750. Under the theory of strict liability the existence of a manufacturer's defect and such defect being the producing cause of appellant's injury is the prime requirement for imposing liability on appellee in the case at bar. *See Pittsburg Coca-Cola Bottling Works v. Ponder,* 443 S.W.2d 546 (Tex.1961). Consequently, the jury's finding that the knife was not manufactured in a defective manner sufficiently

supports the judgment in favor of appellee. Therefore, any error in the submission of the misuse issues and their accompanying instructions is harmless, unless, as appellant contends such error confused or misled the jury. *See Boatland, supra.*

We have determined that there was evidence to support the submission of the misuse issues and that appellee was entitled to such a charge. The trial court's submission of these issues was separate from the submission of the defect issues. Furthermore, appellant has failed to demonstrate and our review of the record has failed to show how the jury could have been confused or misled by any errors within the submission of these issues which would have resulted in the rendition of an improper judgment. *Texas & Pacific Railway Co. v. Snider,* 159 Tex. 380, 321 S.W.2d 280, 283 (1959). Appellant's points of error numbers three and four are overruled.

■ Appellant complains in point of error number five that the trial court erred in failing to grant his motion for new trial because the jury's finding that the knife was not manufactured in a defective manner was contrary to law, against the great weight and preponderance of the evidence, and clearly wrong for the reason that the only evidence of probative force established that the knife in question was manufactured in a defective manner and that such defect was a producing cause of appellant's injuries. When deciding a question of fact such as that presented here this court is bound by the test set out in *In re King's Estate,* 150 Tex. 662, 224 S.W.2d 660 (1951), which requires a court of appeals

> to consider and weigh all of the evidence in the case and to set aside the verdict and remand the cause for a new trial, if it thus concludes that the verdict is so against the great weight and preponderance of the evidence as to be manifestly unjust—this, regardless of whether the record contains some 'evidence of probative force' in support of the verdict. See cases cited, supra. The evidence supporting the verdict is to be weighed along with the other evidence in the case, in-

cluding that which is contrary to the verdict.

*Id.* at 661. Applying this " 'sufficiency' of the evidence" test, *id.* at 661, we have determined that the jury's finding that the knife was not manufactured in a defective manner is not against the great weight and preponderance of the evidence because there was conflicting evidence as to whether a defect existed and, if there was a defect, whether it existed at the time of manufacture or sale. In addition, there was a disparity of evidence as to the time and cause of the break. Appellant's point of error number five is overruled.

■ Appellant complains in his sixth point of error that the trial court erred in failing to grant his motion for new trial because the jury's finding that the defendant's failure to warn plaintiff of the danger of applying force on the side of the blade during the use of the knife for stripping wire did not expose plaintiff to an unreasonable risk of harm was contrary to law, against the great weight and preponderance of the evidence, and clearly wrong for the reason that the only evidence of probative force established that appellee's failure to warn appellant of such danger during use of the knife as an electrician's knife exposed the appellant to an unreasonable risk of harm, and that such failure to warn was a producing cause of appellant's injuries. Strict liability may be imposed upon appellee if appellee marketed an unreasonably dangerous, though nondefective, product "without adequate warning of its danger or without adequate direction of its use." *Lopez v. Aro Corp.,* 584 S.W.2d 333, 335 (Tex.Civ.App.—San Antonio 1979, writ ref'd n.r.e.). This duty to warn is evaluated in light of the expected user's knowledge or experience. *Id.* at 336. The issue in the case at bar inquiring whether appellee had a duty to warn included an instruction stating that "unreasonable risk of harm" meant that "the product sold must be dangerous to an extent beyond that which would be contemplated by the ordinary electrician who uses it, with the ordinary knowledge common to such electrician as to its characteris-

tics." Appellant and an electrician, a co-employee of appellant, both testified that when stripping wire with a skinning knife the blade often caught in the wire. When this occurred it was customary to apply additional force to the knife. The electrician testified that he knew that a knife with a stiff blade should not be exposed to excessive bending on the side and that he would not expect a warning from the manufacturer that the knife could break if pulled after it caught in the wire. Furthermore, appellee presented evidence that it recognized that use of the knife to skin wire would subject the knife to a certain amount of bending; therefore, the knife was designed and manufactured with a bend tolerance of fifteen degrees. Although appellant testified that at the time the injury occurred he only tugged at the knife, appellee presented evidence that the knife broke due to excessive force. Considering this evidence, as well as the inconclusive evidence as to when and how the knife broke, the jury's finding that the appellee's failure to warn did not expose appellant to an unreasonable risk of harm is not against the great weight and preponderance of the evidence. *See In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951). Appellant's sixth point of error is overruled.

All points of error have been considered and are overruled. We find no reversible error. The trial court correctly entered a judgment that appellant takes nothing.

The judgment is affirmed.

CANTU, Justice, dissenting.

I respectfully dissent. I disagree with the majority's treatment of appellant's requested special issues. I would hold that the trial court's failure to submit these requested issues denied appellant a fair submission of the controlling and ultimate issues in the case as applicable to his alternate recovery theory.

The submitted special issues inquiring whether the knife was manufactured in a defective manner and, if so, was the producing cause of the injury, were based upon Restatement (Second) of Torts § 402A

(1965). Appellant, however, also plead and offered evidence to support a cause of action based upon section 402B and was entitled to submission of this theory through special issues. *See generally Texas General Indemnity Co. v. Scott*, 152 Tex. 1, 253 S.W.2d 651 (1952). Section 402B is a distinct cause of action which imposes strict liability for physical harm to the consumer resulting from a misrepresentation of a material fact concerning the character or quality of a product sold and, upon which the consumer justifiably relied, even though the misrepresentation is an innocent one, and not made fraudulently or negligently.

The majority holds that because the requested special issues did not ask the jury (1) whether the representations made were one of *material fact* and (2) whether appellant's employer *justifiably* relied upon these representations when purchasing appellee's tools, these being essential elements of a section 402B cause of action, the requested issues were not in 'substantially correct' form. The majority, therefore, holds that appellant waived his right to complain that they should have been submitted. I would hold that, based on the pleadings and evidence presented in this case, appellant submitted the required issues in 'substantially correct' form. *See* Tex.R.Civ.P. 279. *Southwestern Bell Telephone Co. v. Thomas*, 554 S.W.2d 672 (Tex.1977); *Hardware Dealers' Mutual Fire Ins. Co. v. King*, 426 S.W.2d 215 (Tex.1968).

The strict tort liability formulated by section 402B involves a misrepresentation of material facts that justifiably induces the purchase of a product. The commentary to the Restatement of Torts asserts that section 402B applies only to misrepresentations of *material facts* concerning the character or quality of the chattel in question. Section 402B does not apply to statements of opinion, and, in particular, it does not apply to the kind of loose general praise of wares sold which the seller considers to be "sales talk", and is commonly called "puffing". In addition, the commentary asserts that the fact misrepresented must be a material one, of importance to the normal purchaser, by

which the ultimate buyer may justifiably be expected to be influenced in buying the chattel. Restatement (Second) of Torts § 402B (1965), Comment g. Thus a material fact is one which induces a party to act in reliance on it. *See Putnam v. Bromwell*, 73 Tex. 465, 11 S.W. 491 (1889); *Sawyer v. Pierce*, 580 S.W.2d 117 (Tex.Civ.App.—Corpus Christi 1979, writ ref'd n.r.e.).

Appellee, in a catalogue sent to their customers, represented that the knife was "sturdily constructed of high grade steel carefully tempered" and "guaranteed against defects in materials and workmanship." The evidence was uncontroverted that appellant's employer purchased the knife in reliance upon the representations by appellee. Appellee never claimed that such representations were mere 'puffing' or opinions of the company, and, in fact, the president of the company conceded that the representations referred to the quality of the knives and that, based upon the guarantees made, they had had to replace the knives of some of their customers.

When an issue is uncontroverted, there is no requirement that it be submitted to the jury. *Sullivan v. Barnett*, 471 S.W.2d 39 (Tex.1971); *Wingfield v. Bryant*, 614 S.W.2d 643 (Tex.Civ.App.—Austin 1981, writ ref'd n.r.e.). I feel, and the record indisputably supports a finding that all the evidence relevant to the issues of "material fact" was uncontroverted. Appellee's president acknowledged that the representations referred to the quality of the product which the company readily backed with a replacement guarantee, thus the representations were of the kind by which the ultimate buyer might justifiably be expected to be influenced in the purchase of the product.

Appellant's employer's testimony that he was induced to purchase the knife by the representations of appellee in the sales catalogue is, therefore, unchallenged. Thus the representations were necessarily of material facts as contemplated by section 402B, and did not require a submission of issues to the jury on the element of material fact.[1] When an issue is conceded or unchallenged there should be no reason to require the jury to do a useless thing by requiring it to find an admitted fact.

Under comment j the authors further assert that section 402B applies only where there is *justifiable* reliance upon the misrepresentation of the seller, and physical harm results because of such reliance, and because of the fact which is misrepresented. Section 402B does not apply where the misrepresentation is not known, or there is indifference to it, and it does not influence the purchase or subsequent conduct. The misrepresentation need not be the sole inducement to purchase, or to use the chattel, but it is sufficient that it has been a substantial factor in that inducement. Restatement (Second) of Torts § 402B (1965), Comment j.

Again, it was uncontroverted that the representations made by appellee were substantial factors in appellant's employers' purchasing the knife. Appellee never suggested that appellant's employer had no knowledge of or was indifferent to the representations made by appellee. Since the issue of reliance was also uncontested, appellant was not required to submit it in his requested issues.

Appellant's third requested issue, however, did address reliance; there was merely a failure to include the word *justifiable*. I would hold this to be only a slight variance, *see Southwestern Bell Telephone Co. v. Thomas, supra*, particularly since appellee did not choose to make an issue of any type of reliance. The requirement that an issue must be tendered in substantially correct form does not mean that the issue must be absolutely correct. *See Fawcett v. Bellah*, 556 S.W.2d 598 (Tex.Civ.App.—Corpus Christi 1977, no writ). I would hold that the element of justifiable reliance was submitted in substantially correct form through appellant's requested special issue number three, although under the evidence

1. The majority opinion, citing 3 R. McDonald, Texas Civil Practice § 12.33.2 (rev. 1970), and a rule supported by numerous cases, recognizes

that a request is in "substantially correct" form when it incorporates all of the *required* special issues.

the issue was conceded and did not require submission.

Appellee submits that the trial court properly refused the requested special issues because these issues duplicated the submitted parts. This argument is without merit since appellant relied upon more than one theory of recovery and was entitled to submission of the controlling special issues which would establish each theory. *Texas General Indemnity Co. v. Scott, supra.* The failure to submit such issues is reversible error. *See Southwestern Bell Telephone Co. v. Thomas, supra.*

Strict liability for innocent misrepresentation is totally distinct from the liability imposed by section 402A and the elements of each are distinctly different. In an article by James Sales, *The Innocent Misrepresentation Doctrine: Strict Tort Liability Under Section 402B*, 16 Hous.L.Rev. 239 (1979), he states:

> Under section 402A, liability depends upon whether a product is defective and unreasonably dangerous, whereas section 402B requires only that one show the misrepresentation of a material fact. Thus, section 402B neither focuses nor depends on a defective product, and the fact a product incidentally may be defective or unreasonably dangerous is wholly immaterial to liability. Conversely, a product, although perfectly designed and manufactured, may create liability if the representations of its quality or condition prove to be inaccurate or false. It is the public assurance of quality in merchandising that furnishes the judicial foundation for liability under section 402B. [footnotes omitted]

*Id.* at 252.

The issues submitted to the jury paralleled section 402A. The issues tendered by appellant but not submitted to the jury substantially conformed to a section 402B cause of action. Thus, the pleadings and evidence dictate that appellant was entitled to special issues on both sections 402A and 402B causes of action.

Appellee further argues that the special issues tendered by appellant but not submitted to the jury were not supported by the pleadings and proof. It is true that appellant used pleadings sounding in breach of warranty to support a cause of action based upon a misrepresentation, but the overall language was sufficient to put appellee on notice of a section 402B cause of action.

Since appellee did not deem it necessary to except to appellant's pleadings on the basis of the language used he should not now be heard to complain that he was caught by surprise and did not expect to defend against a section 402B cause of action. Appellant, on the other hand, should not be penalized because he did not select language acceptable to appellee when in fact his selection of words were equivalent to those appellee now claims are required under a section 402B action. We should not concern ourselves with the choice of language in the pleadings but only with their sufficiency and effect.

Appellant relies on the dissenting opinion in *Jack Roach-Bissonnet, Inc. v. Puskar*, 417 S.W.2d 262 (Tex.1967), which asserted that the majority should have considered a section 402B cause of action. The plaintiff in *Roach* plead breach of warranty, negligent misrepresentation, and negligence in refusing to repair. On motion for rehearing, the majority addressed the section 402B cause of action and overruled plaintiff's contention *not* because the cause of action was not plead but because the evidence did not show that the product "was not of the character or quality indicated by the manual." Furthermore, cases from other jurisdictions which have imposed strict liability for breach of warranty have pointed out that warranties do not have to sound in contract but may be based upon liability imposed by law, therefore, sounding in tort. *See Greenman v. Yuba Power Products, Inc.*, 59 Cal.2d 57, 377 P.2d 897, 27 Cal.Rptr. 697 (1962); *Worley v. Proctor & Gamble Mfg. Co.*, 241 Mo.App. 1114, 253 S.W.2d 532 (1952); *Baxter v. Ford Motor Co.*, 168 Wash. 456, 12 P.2d 409 (1932).

Appellant's pleadings alleged that appellees had made certain express warranties

concerning the knife. The allegations were that the knife was not as warranted, that the breaking of the knife should not have occurred had the knife been in the condition which it was warranted, and that such breach of warranties was a direct and proximate cause of the damages suffered by appellant.

There is little difference between the use of the terms "misrepresent" and "warrant". In fact, warrant implies a representation. Warrant has been defined as follows: "to assure, as a thing sold, to the purchaser; that is, to engage that the thing is what it appears, or is represented, to be, which implies a covenant to make good any defect or loss incurred by it." *Webster's New International Dictionary of the English Language*, 2nd ed. (1959), p. 2877. Warranty denotes an express promise that the goods will conform to a particular standard of quality. 13 Tex.Jur.2d Contracts § 159 (1960). An express warranty is an affirmation of fact or a promise by a seller, relating to the goods, that has a natural tendency to induce the buyer to purchase and on which he relies in purchasing the goods. 50 Tex.Jur.2d Rev. Sales, § 240 (1963). Misrepresent has been defined as, "To give a false, improper, or imperfect representation (of)." *Webster's, supra*, p. 1570. Section 402B does not require that the representation be a fraudulent or negligent one, it being sufficient that the representation be wrong, even if innocently made. I see little distinction to be made between the use of either term.

I would hold the pleadings sufficient to support the requested issues. Thus having plead allegations sufficient to support the issues, and having introduced evidence in support of each of the allegations, appellant was entitled to submission of his section 402B special issues. I would reverse and remand.

