Dan BROWN, Appellant,

v.

Irvin GOLDSTEIN, et al., Appellee.

No. B14–83–482CV.

Court of Appeals of Texas, Houston (14th Dist.).

May 31, 1984.

Buck C. Miller, Houston, for appellant.

Pat McKenna, Harvill & Hardy, Houston, for appellee.

Before MURPHY, ROBERTSON and CANNON, JJ.

## OPINION

ROBERTSON, Justice.

This is an appeal from an award for personal injuries sustained in an automobile accident. At issue is (1) the denial of requested jury issues on sudden emergency, appellee's failure to apply her brakes and comparative negligence, and (2) recovery by minor children for expenses paid for by their father. We affirm.

A brief summary of the evidence and explanation of the parties is necessary. Appellee Irving Goldstein is the father of the two minor children who occupied the car in question. Adele Goldstein (Adele) drove the car. Robert Goldstein (Robert) rode in the front seat of the car with his sister. Appellee's car was travelling on the West Loop South on the inside lane next to the emergency lane; appellant was travelling in the same direction in the adjacent lane. Adele's version of what then occurred was:

> I was driving along and he approached from the side and his left blinker was on and he was just about to come into my lane and in order to avoid him coming into my lane, had I not, he would have definitely hit me and I went on the emergency lane hoping to avoid him and he was probably on there for a matter of seconds before we hit the guardrail and spun around and hit the guardrail.

On the other hand, appellant testified he was having car trouble and was trying to get his disabled auto into the emergency lane to his left by crossing the lane in which appellees were travelling. He described what happened, as follows:

> Well, I was in the lane next to hers and she was in the lane next to the guardrail and I was looking in my rearview mirror trying to negotiate this last lane and wiggle my hand up and down and indicate by wiggling my finger that I wanted to get over there. Three cars passed me up and would not let me get over there. Now, after that I looked in the rearview mirror and saw Ms. Goldstein coming on and she was not slowing down either. So I did not get into her lane and for some reason with my hand waving up and down got her excited or what, she got over in the other lane and lost control of her car.

In further testimony appellant clearly maintained that he was not negligent; that he never even attempted to change from his lane of traffic to her lane of traffic; that she had already passed and was ahead of him when she "hit one of those gilly bars in the emergency lane and absolutely lost control of her car." After proceeding down the highway he crossed to the right side of the highway and abandoned his automobile.

 In addressing appellant's points complaining of failure to submit certain issues, several general rules must be observed. Rule 279 of the Texas Rules of Civil Procedure requires the court, when submitting a cause to the jury on special issues, to submit the *controlling* issues made by the pleadings and the evidence. Tex.R.Civ.P. 279. The trial court may not refuse to submit an issue merely because the evidence is insufficient to support a judgment based on the same. *Burke Wiley, Inc. v. Lenderman,* 545 S.W.2d 226, 228 (Tex.Civ.App.—Houston [1st Dist.] 1976, writ ref'd n.r.e.). Controverted *material* facts raise fact questions which must be submitted to the jury for their determination. *Fitzgerald v. Russ Mitchell Constructors, Inc.,* 423 S.W.2d 189, 192 (Tex. Civ.App.—Houston [14th Dist.] 1968, writ ref'd n.r.e.). However, the judge may re-

fuse to submit a requested issue if there is no evidence raising the issue. *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965).

In points of error one and three appellant complains of the failure of the trial court to give the jury his requested instructions on sudden emergency and unavoidable accident. The purpose of the sudden emergency doctrine is to excuse conduct which would otherwise be negligent. *Yarborough v. Berner*, 467 S.W.2d 188, 191 (Tex.1971). In our case, appellant contended his conduct did not cause the accident. He claimed that he never entered nor attempted to enter appellee's lane. If the problem with his car did not cause him to commit an act which would otherwise be negligent, there is nothing for the sudden emergency doctrine to excuse. We overrule point of error one.

The above reasoning also applies to appellant's request for an instruction on unavoidable accident. The doctrine of unavoidable accident is raised when a non-human condition (such as fog, wet pavement or obstruction to vision) is involved. *Yarborough v. Berner*, 467 S.W.2d 188, 191 (Tex.1971); *Foley's Department Store v. Gardner*, 588 S.W.2d 627, 629 (Tex.Civ. App. [14th Dist.] 1979, no writ). Appellant denied causing the accident. Therefore, he could not also assert that a non-human condition caused him to cause the accident. We overrule point of error three.

In his second point of error, appellant contends the trial court erred in failing to submit his requested special issue on Adele's failure to keep a proper look out. He argues that based upon his testimony that he was "[wiggling] my hand up and down and [indicating] by wiggling my finger that I wanted to get over there" and Adele's testimony that she never saw such actions on appellant's part created a fact issue as to whether Adele was negligent in failing to keep a proper look out. We do not agree. The majority would be content to dispose of appellant's point on the basis that *under the facts of this case* Adele did not owe a duty to appellant to let him enter

her lane of traffic. Negligence is constituted *only* through failure to discharge a duty. *McCall v. Marshall*, 398 S.W.2d 106 (Tex.1965). If she owed no duty to appellant, we fail to see how, *on the facts of this case*, she could be negligent in failing to see his hand signal. However, in view of the dissent, we will address the issue further. Whether appellant was hand signalling to enter Adele's lane of traffic and whether Adele saw or should have seen his hand signals was totally immaterial to any issue in the case. Adele's testimony that she saw appellant's turn signal lights blinking, that she saw appellant's auto coming into her lane of traffic and that she swerved into the emergency lane to avoid a collision was evidence that she was, in fact, keeping a proper lookout. Appellant attempts to elevate this supposed conflict in the evidence over the hand signal to the status of a disputed issue requiring resolution by the jury. We disagree with this reasoning. It is only where the evidence is conflicting on the *controlling* issues that the matter must be submitted to the jury. Under the evidence recited above the issue of failure to keep a proper lookout could not be a controlling issue in the case. According to appellant's version of the facts he was not negligent and never even attempted to enter Adele's lane of traffic. Appellant contends Adele was ahead of him when she lost control of her car. If this version was correct appellant was not liable —not, however, because Adele failed to keep a proper lookout, but because he was not negligent. However, the jury refused to believe appellant and found him negligent. There being no issue for the jury, the court properly refused the issue and the third point of error is overruled.

In his fourth point, appellant contends the trial court erred in failing to submit his requested issue on Adele's failure to apply her brakes. We reject this contention for the same reason we rejected the above point three. The *only* evidence found in the record concerning application of brakes is in the testimony of Robert and Adele. The testimony does not raise a fact

issue as to the negligent application of brakes. Point four is overruled.

In his fifth point, appellant alleges error in the failure of the trial court to submit his requested issued on comparative negligence. What we have said above disposes of this contention. If there were no facts upon which Adele could have been found to be negligent, obviously an issue on comparative negligence was not authorized. The fifth point is overruled.

Finally, in his sixth point, appellant contends the court erred in allowing the two minor children recovery for two items of medical expenses which had been paid for by their father when the suit by their father was barred by the statute of limitations. This issue has not been preserved for our consideration for the reason that no objection was made to the jury charge nor was an objection made to the entry of judgment allowing recovery on the amounts found by the jury. See Tex.R. Civ.P. 274. This point is overruled.

The judgment is affirmed.

MURPHY, Justice, dissenting.

Finding myself in disagreement with the other members of the court, I would like to record my respectful dissent. I agree with the majority's holding that points of error one, three, four and six should be overruled; therefore, I will discuss only points of error two and five.

Points of error two and five concern the court's denial of requested special issues. In point of error two, appellant asserts that the trial court erred in refusing to submit a special issue on Adele Goldstein's failure to keep a proper look out. Point of error five claims that the trial court erred in failing to submit appellant's requested special issue on comparative negligence. I agree with these contentions.

The evidence related to whether Adele Goldstein failed to keep a proper look out was conflicting. Miss Goldstein testified that when she first noticed appellant's car in the lane to her immediate right it had only cleared about two-thirds (2/3) of her car and the left blinker was on. She said that at that time he was trying to move into her lane. To avoid a collision, she simultaneously applied her brakes and went into the emergency lane, hitting the guardrail. Her car never came into contact with appellant's car.

She once said that he would have hit her if she had not moved into the emergency lane.

[Miss Goldstein] "... he was just about to come into my lane and in order to avoid him coming into my lane, had I not, he would have definitely hit me ..."

[Miss Goldstein's attorney] "Do you remember whether or not he came into your lane and you went over and hit the guardrail, did you notice whether or not he got into the lefthand lane?"

[Miss Goldstein] "It would be hard to be sure. It seems like he tried to get in and I guess after realizing what was happening, he went back in the lane he was in originally."

Later, she said that she did not know if appellant's car actually came into her lane.

[Defense Counsel] "Did he get into your lane?"

[Miss Goldstein] "Like I said before I don't know if he actually did. He must have gone or swerved immediately back to the lane he was in. I mean we were on the emergency lane and hit the guardrail. So I don't know exactly what happened."

Robert Goldstein, who was seated in the front seat on the passenger side of the car driven by Adele Goldstein, testified that when he first saw appellant's car to his right, it almost immediately came into the lane in which the Goldsteins were travelling. He said that about one-half of appellant's car was in their lane before his sister took evasive action. Robert's testimony was that he did not see appellant's left blinker flashing.

Appellant testified that the car he was driving had been stolen from him and he had gone to pick it up that afternoon. He had no problems with the car until he got

on Loop 610. Once he got on the Loop, however, his car's electrical system failed; the motor stopped; and the signals would not work. Appellant said he saw the Goldstein car through his rear view mirror and it was approaching the rear of his car in the lane to his left. He said he was wiggling his arm out the window and pointing to indicate that he needed to get to the emergency lane, but that Miss Goldstein would not let him pull into her lane. Adele and Robert Goldstein, however, testified that they did not see appellant waving his arm out the window.

Appellant testified that he never entered appellee's lane, and that she passed him, hit a divider in the emergency lane, lost control of her car and collided with the guardrail. Appellant drove one-fourth mile further, negotiated his way through the lanes of traffic to the right shoulder, and abandoned his car. Because the evidence was conflicting on the issue of look out, the jury should have received appellant's requested special issue on whether Adele Goldstein failed to keep a proper lookout. *See Fitzgerald v. Russ Mitchell Constructors, Inc.,* 423 S.W.2d 189, 192 (Tex.Civ. App.—Houston [14th Dist.] 1968, writ ref'd n.r.e.). Ordinarily, proper lookout is a question for the jury. *Texas & Pacific R.R. Co. v. Day,* 145 Tex. 277, 197 S.W.2d 332 (1946); *Berlanga v. Elizondo,* 463 S.W.2d 757 (Tex.Civ.App.—San Antonio 1971, writ ref'd n.r.e.).

In its opinion, the majority states:

The majority would be content to dispose of appellant's point on the basis that *under the facts of this case* Adele did not owe a duty to appellant to let him enter her lane of traffic. Negligence is constituted *only* through failure to discharge a duty. If she owed no duty to appellant, we fail to see how, *on the facts of this* case she could be negligent in failure to see his hand signal. [citation omitted]

I disagree. The issue in this case is not whether Adele saw appellant's hand signals. That is only one factor in many which constitutes a conflict in the evidence on the issue of her lookout. The majority would have us believe that if a driver stays in his own lane, he has no duty to be aware of the cars in adjoining lanes. "Although a motorist is not required to anticipate negligent or unlawful conduct on the part of others, he is not entitled to close his eyes to that which is plainly visible, and which would have been observed by a person of ordinary prudence similarly situated." *Berlanga,* 463 S.W.2d at 759. "Summed up broadly, public policy imposes a duty upon a motorist when operating a vehicle on a public street to be alert and on watch for all that affects safe operation and is normally visible to him in the exercise of due care." *Hatcher v. Mewbourn,* 457 S.W.2d 151, 153 (Tex.Civ.App.—Texarkana 1970, writ ref'd n.r.e.).

In *Hatcher,* two vehicles were travelling in the same direction in adjoining lanes. Just prior to the collision, Mewbourn was overtaking Hatcher. Mewbourn had noticed Hatcher's truck for some time prior to drawing abreast of it. He said that he had drawn up nearly even with the truck and that his front bumper was within four to six feet of being even with the truck's front bumper. Hatcher denied that he saw Mewbourn's vehicle at any time. Both claimed that their attention was so directed at the time of and just prior to the collision that neither actually saw the other's vehicle or was aware of its position on the street. The jury found that each failed to maintain a proper lookout.

In fact, one has a duty to keep a proper lookout even in a situation in which he has the right-of-way at an intersection. *Berlanga,* 463 S.W.2d at 760; *Strawder v. Pantoja,* 372 S.W.2d 246 (Tex.Civ.App.—Houston 1963, writ ref'd n.r.e.).

In our case, the jury could have reasonably drawn the inference that Adele Goldstein failed to keep a proper lookout. The record does not show that as a matter of law Miss Goldstein owed no duty to appellant. I would sustain point of error two.

Point of error five asserts the trial court erred in refusing to submit appellant's requested special issue on comparative negli-

gence to the jury. I agree. If, as appellant contends, he never entered Adele Goldstein's lane, the collision might have been due to Miss Goldstein's negligence. Further, each party's negligence could have been partially responsible for the accident. When the evidence raises the possibility that both parties could have been negligent, the jury is to determine what percentage of the incident was due to each party's negligence. Tex.R.Civ.P. 277. I would sustain point of error five.

Accordingly, I would reverse the judgment of the trial court and remand this cause for proceedings consistent with this opinion.